In the Matter of the Application of JANET KINGSLAND, as Administratrix, etc., to Sell Real Estate, Appellant, *v.* GEORGE W. MURRAY, Respondent.

The title to real estate, upon the death of the owner, vests immediately in his heirs and devisees; it can be taken for the payment of his debts only by virtue of the statute, and the statutory provisions must be strictly pursued.

In order, therefore, to justify a surrogate's decree directing the sale of real estate, of which an intestate died seized, for the payment of his debts, it must be made to appear " that all the personal property of the decedent which could have been applied to the payment of the .decedent's debts and funeral expenses has been so applied, or that the * * * administrators have proceeded with reasonable diligence in converting the same into money and applying it in the payment, * * * and that it is insufficient for the payment of the same." (Code Civ. Pro. § 2759, subd. 5.)

If the administrators waste or squander the personal property so that it becomes insufficient to pay the debts, the only resort of the creditors is to them, to enforce their personal responsibility.

Accordingly *held*, that a surrogate's decree directing the sale of a decedent's real estate for the payment of his debts was error where it appeared that the decedent left sufficient personal property to pay his debts and funeral expenses, which came into the hands of his administrator, and which, in the exercise of reasonable diligence, could have been applied for that purpose.

A decision of the surrogate in such a proceeding upon conflicting evidence as to whether the administrator exercised due diligence, is not conclusive, but is reviewable at General Term. (Code Civ. Pro. §§ 2576, 2586, 2587.)

The decision of the General Term is not reviewable here. (§ 1337.)

Reported below, 60 Hun, 116.

(Argued March 17, 1892; decided April 19, 1892.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made at the June term, 1891, which reversed a decree of the surrogate of the county of New York, directing a sale of the real estate of Henry Foster Topping, deceased, for the payment of his debts.

The facts, so far as material, are stated in the opinion.

*R. H. Underhill* for appellant. The sale was made in "good faith," properly conducted, and with "the ordinary prudence" of the statute. (Code Civ. Pro. § 1832; *Kent v. Whitney*, 9 Allen, 62; *Brigham v. Evans*, 113 Mass. 419; *Crook v. Owens*, 121 id. 28.) The payment of the counsel fee should be deemed proper, as found by the referee and the surrogate, and the administrator only be charged with the $300, as the net proceeds of the Adgate stock. (*St. John v. McKee*, 12 Dem. 236; *Fowler v. Lockwood*, 3 Redf. 466.) The court below erred in construing section 2759 of the Code as not vest‑ ing the same discretion in the surrogate to direct a sale of real estate that he possessed under the Revised Statutes as amended by the Laws of 1837. (1 R. S. 494, § 41.) For the purpose of determining whether or not a deficiency in the personal estate exists, only the money actually received by the administratrix is considered assets for the payment of debts. (*Bridge v. Swain*, 3 Redf. 487; *Richmond v. Foote*, 3 Lans. 244; *Barnett v. Kincaid*, 2 id. 220; *Moore v. Moore*, 14 Barb. 27.) The decree of the surrogate in this case having been reversed by the Supreme Court, both on the law and the facts, this court will review the determination of the lower court on the facts as well as the law. (Code Civ. Pro. §§ 1337, 1338; *In re Cottrell*, 95 N. Y. 330; *In re Ross*, 87 id. 514; *Davis v. Clark*, Id. 623; *Hewlett v. Elmer*, 103 id. 156; *In re Bud‑ long*, 126 N. Y. 423; *Burgher v. Same*, 111 id. 523.) In the absence of an express prohibition of the right of the court to review the facts, as contended for, it will not be presumed that the legislature intended to thus limit its jurisdiction. (Code Civ. Pro. §§ 2547, 2549.)

*Daniel Finn* for respondent. The creditor cannot stand quietly by and allow the personal property to be misapplied, and then come into a court of equity and have his claims against the decedent made a lien and charge upon the land owned by the ancestor at the time of his death. (*Covell v. Weston*, 20 Johns. 414; *Pierce v. Alsop*, 3 Barb. Ch. 184; *Wilson v. Wilson*, 13 Barb. 252; *Funda v. Chapman*, 23 Hun, 119;

*Thatcher* v. *Powell*, 6 Wheat. 119; *Stilwell* v. *Swarthout*, 81 N. Y. 109; *Jackson* v. *Esty*, 7 Wend. 148; *Bloom* v. *Burdict*, 1 Hill, 130; Code Civ. Pro. § 2759; *Moore* v. *Moore*, 14 Barb. 27.) The court had no authority or power to order a sale of the real property to pay debts. (*Mosher* v. *Cochrane*, 107 N. Y. 35; Code Civ. Pro. § 2759; *Reed* v. *Lozier*, 15 N. Y. S. R. 299; *Forbes* v. *Halsey*, 26 N. Y. 53.) The contestant Murray was, in any event, entitled to have the decree of the surrogate reversed. (*Forbes* v. *Halsey*, 26 N. Y. 53; *Mosher* v. *Cochrane*, 107 id. 35; Code Civ. Pro. §§ 2437, 2734; *Wilcox* v. *Smith*, 26 Barb. 349; *Journault* v. *Ferris*, 2 Dem. 320.) The land sold to the contestant Murray was freed from the statutory charge or lien which the statute gives creditors on the lands of decedents for their debts, before the court acquired jurisdiction of Murray by the service of the citation and petition herein on him on the 7th of January, 1889. (*Platt* v. *Platt*, 105 N. Y. 488; *Smith* v. *Soper*, 32 Hun, 46; *White* v. *Kane*, 19 J. & S. 295.) The surrogate on the filing the contestant's answer should, in accordance with its prayer, have compelled Henry Foster Topping, Jr., the former administrator, to render an account of his proceedings as the administrator of the estate of the decedent. (Code Civ. Pro. § 2759.) The contestant was entitled to a decision of the surrogate in writing, which stated separately the facts found and the conclusions of law, and to have his requests to find passed upon by him. (*In re Moulton*, 32 N. Y. S. R. 631.) The Court of Appeals cannot review questions of fact, depending upon conflicting evidence in any case, without some express provision of the statute, authorizing it to review such question. (Code Civ. Pro. §§ 1337, 2586'; *In re Ross*, 87 N. Y. 514; *Marx* v. *McGlynn*, 88 id. 351; *In re Budlong*, 126 id. 423.)

EARL, Ch. J. Henry Foster Topping died November 15, 1885, and on the twenty-third day of November, his son and only heir at law Henry Foster Topping, Jr., was appointed his administrator by the surrogate of New York. On the 6th day of January, 1886, the son gave to Daniel Finn a mortgage on

the real estate left by his father for $8,500, and on the tenth day of February thereafter, he sold and conveyed the real estate to the respondent George W. Murray, subject to the mortgage. On the 17th day of January, 1888, the letters of administration granted to the son were revoked, and on the twenty-first day of May of the same year, Janet Kingsland, the petitioner in these proceedings, was appointed administratrix *de bonis non* in his place. On the 21st day of November, 1888, she filed a petition in the Surrogate's Court to procure a sale of the real estate left by the intestate for the payment of his debts. Murray, the present owner of the real estate, appeared and contested the proceedings, and the surrogate referred the matter to a referee, who found that there were debts against the intestate to the amount of $1,545; that the administratrix had proceeded with reasonable diligence in converting the personal property into money and applying it to the payment of the debts of the decedent, that it was insufficient for that purpose, and that it was necessary to apply the real property of the decedent to the payment of his debts. The findings of the referee were finally confirmed by the surrogate, and he made a decree ordering a sale of the real estate. From that decree Murray appealed to the General Term, where it was reversed upon the law and the facts, and the petition was dismissed, with costs.

The evidence showed that the administrator Topping had received, for the sale of certain corporate stock belonging to the decedent, $1,500, and there was certain other property consisting of implements, cattle and other chattels upon the farm of the decedent which, at his death and at the time of the appointment of the administrator, was worth $2,547. None of the decedent's property had been applied to the payment of his debts, and Topping, the administrator, had not been called to account. The surrogate apparently proceeded upon the theory that it was incumbent upon the petitioner only to show that she had proceeded with reasonable diligence to apply all the property which came into her hands in payment of the debts of the decedent. At the General Term, as

we infer from its opinion, it was held that it was incumbent upon the petitioner to show that both she and the prior administrator had proceeded with proper diligence, and had applied the property of the decedent to the payment of debts, and that it was insufficient for that purpose; and it held that from the evidence, it did not appear that the property of the decedent, at the time of his death, was insufficient to pay his debts, and that the administrator and administratrix had proceeded with reasonable diligence in applying it to that purpose, and upon that ground it reversed the decree of the surrogate.

The title to real estate upon the death of the owner vests immediately in his heirs and devisees, and at common law they took it free from his general debts. It can be taken for the payment of debts now only by virtue of statutes, and the statutory provisions must be strictly pursued in order to justify its sale. It is provided in section 2759 of the Code that "a decree directing the disposition of real property, or of any interest in real property, can be made only where, after due examination, the following facts have been established to the satisfaction of the surrogate," and among the facts so to be established, are the following: "That all the personal property of the decedent, which could have been applied to the payment of the decedent's debts and funeral expenses, has been so applied; or, that the executors or administrators have proceeded with reasonable diligence in converting the personal property into money and applying it to the payment of those debts and funeral expenses; and that it is insufficient for the payment of the same, as established by the decree." There seems to be some difference of opinion between the surrogate and the General Term as to the scope and meaning of this provision. We think the meaning is reasonably free from doubt. If the decedent at the time of his death left sufficient personal property which could have been applied to the payment of his debts and funeral expenses, in the exercise of reasonable diligence on the part of his executors or administrators, then resort cannot be had to the statutes for the sale of his real estate for the payment of his debts. In that event the

personal property is the fund for the payment of his debts, and the creditors must resort to that through the executors or administrators. If they waste or squander the personal property so that it becomes insufficient for the payment of the debts, the only resort of the creditors is to them to enforce their personal responsibility, and they cannot in that case cause the real estate to be sold under the statutes referred to. But if the personal property left by the decedent at the time of his death was insufficient to pay his debts, or if the executors or administrators proceed with reasonable diligence in applying it to the payment of his debts, and it proves insufficient for that purpose, then, and then only, a case is made for the sale of the real estate. So in the language of this section, before the surrogate can make a decree for the sale of the real estate the petitioner must establish that all the personal property of the decedent which *could* have been applied to the payment of the decedent's debts and funeral expenses has been so applied. If he establishes that, then he need go no further, and the surrogate is authorized to make the decree. If he cannot establish that, but establishes the other alternative, that the executors or administrators have proceeded with reasonable diligence in converting the personal property into money and applying it to the payment of the debts and funeral expenses, and that it is insufficient for the payment of the same, then, even if it has not all been so applied at the time of the petition the surrogate is authorized to make the decree.

Our construction that subdivision 5 of section 2759 above quoted has reference to the personal property left by the decedent at the time of his death, or at least to that which came or could have come into the hands of his executors or administrators upon their appointment, is strengthened by reference to subdivision 4 of section 2752, which provides that the petition for the sale of the real estate, if presented by an executor or administrator, must set forth the amount of personal property "which has come to his hands or those of his co-executors or co-administrators, if any, the application thereof and the amount which may yet be realized therefrom." It is

also fortified by a reference to all the statutes upon the subject of the sale of the real estate of a decedent for the payment of his debts passed in this state prior to the enactment of the present provisions of the Code. (Chap. 27, Laws of 1786, passed April 4th of that year; chap. 77 of the Laws of 1801; the act of April 8, 1813 [1 Revised Laws, 444]; 1 Revised Statutes, 100, as amended in 1830; chap 460, Laws of 1837.) While there are no decisions precisely in point the following give some countenance to our construction: *Skidmore* v. *Romaine* (2 Bradford, 122); *Corwin* v. *Merritt* (3 Barb. 341); *Moore* v. *Moore* (14 id. 27); *Tucker* v. *Tucker* (3 Abb. Ct. App. Cases, 428); *Moser* v. *Cochrane* (107 N. Y. 35); *Reed* v. *Lozier* (15 N. Y. St. Rep. 299).

It is true that under this construction of the statute an irresponsible executor or administrator may so waste and misappropriate the personal property of a decedent, that none of it could be applied to the payment of his debts, and that thus a proceeding to sell the real estate could not be maintained for the reason that in such a case it could not be shown that the executor or administrator had proceeded with reasonable diligence in converting and applying the personal property to the payment of debts; and, therefore, there may be cases, although rare, where the creditors may not be able to compel the sale of the real estate of the decedent for the payment of their debts under the provisions of the Code referred to. But creditors are not confined to such a proceeding in their efforts to compel payment of their debts. During three years after the granting of letters testamentary, or of administration, they have their remedy against the personal property of the decedent, and against the executors or administrators, for any waste or misappropriation of the same. During that period they may resort to the real estate, and by showing a compliance with the provisions of the law, they may compel a sale of it for the payment of their debts. But if they fail to get payment, within the three years, out of the real or personal estate left by the decedent, then after that time further remedies are given to them by provisions of law found in the Code.

(§§ 1837 to 1860.) They may sue the surviving husband or wife or next of kin of the decedent, who have received any of his personal property. If they fail to recover their debts in full from them, then they may sue any legatee who has received any of the property or assets of the decedent. If they fail to recover from any of the persons who have received the personal property of the decedent, then they may sue and recover from the heirs who have received any of. the real estate or its proceeds. If they fail to recover the full amount of their debts from the heirs, then they may resort to the devisees who have received any of the real estate or its proceeds. Therefore, taking all the provisions of the law, the cases must be very rare where a creditor, proceeding with proper diligence, would be unable to recover payment of his debt, if the decedent, at the time of his death, left ample property for that purpose.

Here there was evidence tending to show that the decedent, at the time of his death, left sufficient personal property, which came into the hands of his administrator to pay all his debts. The inference from the evidence is that he misappropriated and wasted a large part of it. There is also evidence tending to show that the administratrix *de bonis non* did not proceed with reasonable diligence. There had been no effort made to procure an accounting from the administrator, or to enforce his responsibility for personal property wasted or misappropriated. Even if it can be said that he is insolvent and unable to respond, there has been no effort made to collect anything from the sureties upon his bond as administrator. Upon these matters the decision of the surrogate is not conclusive. His judgment and decision upon the facts were reviewable at the General Term. (Code Civ. Pro. §§ 2576, 2586, 2587.) Where the appeal in such a case to the General Term involves questions of law the aggrieved party may take a further appeal to this court. If the General Term reverses upon questions of law only, an appeal may be taken to this court from its decision. Where the evidence is conflicting, or where it is of such a nature that diverse inferences may be drawn there-

from, the decision of the General Term upon questions of fact cannot be reviewed in this court. (*In the Matter of Ross*, 87 N. Y. 514.) This is not an appeal in an action provided for in section 1338 of the Code, but it is an appeal from an order made in a special proceeding in the Surrogate's Court. Section 1337 of the Code provides that a question of fact arising upon conflicting evidence cannot be determined upon an appeal to this court, unless where special provision for the determination thereof is made by law. No special provision is found in the Code authorizing a review in this court of a question of fact in any special proceeding, or upon any appeal from the Surrogate's Court. As this appeal, therefore, involves no question of law, and involves merely questions of fact, as to which the surrogate and the General Term differ, we have no jurisdiction to interfere with the order of the General Term, and it should, therefore, be affirmed with costs.

All concur.

Order affirmed.