(21 Misc. Rep. 419.)

### In re GEORGI.

#### (Surrogate's Court, New York County. October, 1897.)

1. ADMINISTRATION OF ESTATES—DEBTS DUE BY ADMINISTRATOR.
   Debts due from an insolvent administrator, contracted in decedent's lifetime, must be treated as any other uncollectible debt due the estate, and cannot be considered as moneys of the estate received by the administrator.

2. SAME—SALE OF REAL ESTATE TO PAY DEBTS.
   All amounts due from the administrator for moneys received from the estate must be applied pro rata to the debts of the estate, and only so much of the real property as is necessary to pay the balance will be ordered sold.

3. PAYMENTS—APPLICATION.
   The rule that a creditor may elect how he shall apply funds paid generally by a debtor does not apply to proceeds received from the sale of mortgaged property, but must be applied pro rata to the several debts secured by the mortgage.

4. WITNESS—TRANSACTIONS WITH DECEDENT.
   An administrator may testify in what capacity decedent signed notes jointly with him.

5. ADMINISTRATORS—SALES OF DECEDENT'S LAND.
   Under Code, § 2766, on giving the bond required, an administrator is entitled to make sales of real property ordered by the court.

Proceeding by Otto H. Georgi, administrator, to sell the property of the estate to pay the debts. To a report of the referee advising the sale, the heirs file exceptions. Decree of sale entered.

John Aitken, for petitioner.
Edward Russell, for Licette Georgi and Emma Davids.
James M. Fisk, for Bowery Bank.

ARNOLD, S. This is a proceeding instituted under section 2750 of the Code of Civil Procedure by the administrator of the estate of the decedent for the purpose of obtaining a sale of the latter's real estate for the payment of his debts. The land in question descended to the only child of the intestate, subject to the dower right of the widow; and on their behalf answers were interposed to the petition, and an order of reference was made to take proof of the several matters and allegations set forth in the petition and answers, and the referee was directed to report such proofs to the court, with his opinion thereon. He has taken and reported such proofs, and has incorporated in his report certain findings made by him thereon, and exceptions have been filed thereto by the respondents. As the reference was not one to hear and determine, this was not necessary or correct practice, but the questions involved can and must be disposed of on the application now made by the peti-

tioner for the decree provided.for by section 2759 of the Code. The respondents' contention, which is set forth in their exception to the referee's refusal to find conclusion of law numbered "I." in exceptants' request, must, at least in part, be sustained, in view of the language of section 2759 of the Code, and of the decisions of the court of appeals in Kingsland v. Murray, 133 N. Y. 170, 30 N. E. 845; Hogan v. Kavanaugh, 138 N. Y. 417, 34 N. E. 292; Long v. Long, 142 N. Y. 545, 37 N. E. 486. And see In re Lichtenstein's Estate, 16 Misc. Rep. 667, 39 N. Y. Supp. 174. The courts have uniformly held that, as the statutory provisions for the sale of real estate to pay debts are in derogation of the common-law rights of the heirs at law or devisees of the land, they must be strictly pursued in order to devest the title of the latter by a sale, or incumber it by lease or mortgage. The section of the Code last cited provides that a decree directing the disposition of real property, or of an interest therein, can be made only where, after due examination, certain facts have been established to the satisfaction of the surrogate, —among others (subdivision 5), that all the personal property of the decedent which could have been applied to the payment of his debts and funeral expenses has been so applied, or that the executors or administrators have proceeded with reasonable diligence in converting the personal property into money, and applying it to the payment of such debts and funeral expenses, and that it is insufficient for the payment of the same, as established by the decree. In Kingsland v. Murray, supra, it is said:

"So, in the language of this section, before the surrogate can make a decree for the sale of the real estate the petitioner must establish that all the personal property of the decedent which could have been applied to the payment of the decedent's debts and funeral expenses has been so applied. If he establishes that, then he need go no further, and the surrogate is authorized to make the decree. If he cannot establish that, but establishes the other alternative, that the executors or administrators have proceeded with reasonable diligence in converting the personal property into money, and applying it to the payment of the debts and funeral expenses, and that it is insufficient for the payment of the same, then, even if it has not all been so applied at the time of the petition, the surrogate is authorized to make the decree."

And the result of the decisions, as I understand the same, is that to the extent of the money which has come into the hands of the executor or administrator, and personal property, which, although not actually converted into money, can be so converted and applied for the payment of the debts and funeral expenses, creditors must have recourse thereto and exhaust the same before resorting to the real estate, and the latter can be sold only for any deficiency necessary to be made up for such payment. In the case last cited the original administrator had received property applicable to the payment of decedent's debts, but had not so applied the same, and had converted it to his own use, and the court said:

"The personal property is the fund for the payment of his debts, and the creditors must resort to that through the executors or administrators. If they waste or squander the personal property, so that it becomes insufficient for the payment of the debts, the only resort of the creditors is to them, to enforce their personal responsibility, and they cannot in that case cause the real estate to be sold under the statutes referred to."

As it appeared in that case that there was sufficient personal property to pay all the debts, the application to sell the real estate was denied. In the present case it is shown that the administrator, in a compulsory proceeding instituted by the widow of the decedent, filed an account of his proceedings in 1892, and then filed a petition for a judicial settlement of such account, and brought into the proceeding by citation the widow and child of the intestate, and several of the persons now claiming to be creditors of the latter; and a decree was entered therein on October 28, 1896, during the pendency of these proceedings, whereby it was found that the administrator was chargeable with a cash balance of $1,731.31, to be distributed among the persons entitled to receive the same, in the proportions therein directed. It was shown before the referee, and conceded on this application, that the administrator was then, and ever since has been, insolvent, and that no part of the said sum of $1,731.31 has been paid out by him. The aggregate of the debts which have now been proved against the estate amounts to a much larger sum than this balance, and the creditors are entitled to resort to the real estate; but this can be granted only to the extent that the personal property, which was applicable to the payment of debts, and which could have been applied thereon, was insufficient for the purpose. I find, by an examination of the decree, that the administrator is charged with certain rents and other moneys collected by him during the lifetime of the decedent, and belonging to the latter, and credited with certain amounts paid by him for account of decedent during his lifetime, with commissions on rents collected, and with a disbursement made by him in settlement of an incumbrance on real estate owned by them jointly. These debits amount to $1,466.33, and the credits to $1,299.26, leaving a balance of $167.07, which is included in the cash balance of $1,731.31 charged to him in the decree; and deducting same and disbursement of $20 therefrom leaves a balance of $1,564.24. While the administrator was properly chargeable in his account with any balance due by him to the decedent (Code Civ. Proc. § 2714), I think the same must be treated, in view of the admitted insolvency of the former, as any other uncollected and uncollectible asset of the estate, and not as an asset which came into his hands in the course of administration, and which could have been applied to the payment of the decedent's debts, for the purposes of this proceeding. The liability of an executor who is indebted to his testator is not, for all purposes, the same as if he had actually received so much money. If wholly unable to pay in pursuance of an order or decree of the surrogate, because of insolvency, he cannot be punished for contempt, nor would he be guilty of embezzlement. Baucus v. Stover, 89 N. Y. 1; In re Ockershausen, 59 Hun, 200, 13 N. Y. Supp. 396. Nor can an insolvent executor, because indebted to a testator at the time of his death, be punished for contempt for failure to discharge a legacy, payment whereof has been adjudged by a decree. In re Rugg, 4 Dem. Sur. 105. The exceptants are entitled to have the sum of $1,072.14, being the said balance of $1,564.24, less the payments directed by the decree to be made therefrom for the special guardian's fees, $292.10,

and the funeral charges, $201, applied to or credited upon all the debts, pro rata, according to their respective amounts, and a sale or other disposition of the real estate can be had for the purpose of satisfying the balance of such indebtedness only.

The largest claim against the estate is filed by the Bowery Bank, and arises upon a promissory note made by the decedent to the order of, and indorsed by, Otto H. Georgi, who is the petitioning administrator herein. To secure the payment of this note and another of $2,000 made by him, both of which notes were discounted by the bank, Otto H. Georgi executed a mortgage to the latter upon certain real estate. Subsequently the bank received from the proceeds of a sale of a part of the mortgaged property, in a partition suit, certain moneys on account of the debt secured by its mortgage, and also received an additional sum upon a foreclosure of said mortgage against another portion of said property. The bank has credited these several amounts, first upon the $2,000 note upon which the decedent was not liable, and credited the balance only upon the $4,000 note, upon the claim that, as no application for such moneys was made or directed by the creditor, it had the right to make the application in such manner as it saw fit. The respondents claim that the moneys so received by the bank should be applied pro rata upon each of the two notes, and their position is sustained by the case of Bank v. Moore, 112 N. Y. 543, 20 N. E. 357. In that case the question before the court was as to the proper application of certain moneys arising from a sale under foreclosure of a mortgage held by the plaintiff, which had been executed to it by one Church as security for the payment of two notes and an accepted draft. Church was the drawer of the latter, the maker of one of the notes, and an indorser on the other. One Moore was the acceptor of the draft, and an indorser on the Church note. It appeared that all these parties were insolvent, except Mbore. The court held that the rule that a creditor has the right to make such application of payments made to him generally by the debtor, if the latter gave no directions in respect thereto, does not apply to payments received by the creditor through foreclosure actions or other legal proceedings, but that in such cases the court must make the application, and apply the same pro rata upon each of the debts secured by liens on the premises from the sale of which the moneys are derived. In that case it appeared that Moore, who made the contest with respect to the application of the moneys, stood in the relation of surety; being accommodation maker of the note indorsed by Church, and accommodation acceptor of the draft drawn upon him by the latter. While this circumstance is referred to in the decision, yet the court made no distinction in making the application between the paper upon which Moore was liable and that upon which he was not, but applied the moneys ratably upon each debt. In the present case it does not appear in evidence that the decedent was an accommodation maker of the $4,000 note. It is quite likely, however, that such was the case, as Otto H. Georgi has not made any claim for reimbursement from this estate for the moneys paid on the note from the proceeds of the sale of his real estate, which it may be inferred he would have done if the decedent

was primarily liable on the paper.   An attempt was apparently made by the contestants before the referee to examine the administrator in respect to the consideration which the decedent received for making the note; but this was objected to by the bank, and the objection was sustained by the referee, and, as it seems, upon the ground that the only question then before him was as to whether the bank was the owner of the note, and as to what was due thereon. There does not seem to be any distinction between this case and that of Bank v. Moore.   In both cases the mortgage was given by the party dealing directly with the mortgagee, and for the purpose of securing several debts, without preference as to the manner or order of payment.   The respondents are entitled to have the moneys received by the bank applied pro rata upon the two notes mentioned in its mortgage.   I think they were entitled to show, if they could, that the decedent was an accommodation maker on the $4,000 note. The administrator was not prohibited from testifying by reason of the provisions of section 829 of the Code.   It cannot be said that the testimony was in his own interest.   The questions asked were perhaps not properly in the line of cross-examination of the witness, and might, therefore, have been excluded for that reason.   It does not seem to be material, under the decision of the court of appeals above referred to, for the contestants to prove that the decedent stood in the relation of surety in the transaction; but, if they desire to take testimony on that point, they may have an opportunity to do so before the decree is made. ı

The parties have now conceded that a mortgage or lease of the real estate is not advisable, and that a sale should be made.   This will be taken into consideration in making the inquiry prescribed by section 2760 of the Code, and an order may be presented for the appointment of appraisers as therein provided.   With respect to the suggestion that the sale shall not be made by the present administrator, it must be said that section 2765 of the Code requires that the decree shall direct that the mortgage, lease, or sale ordered shall be made by the administrator, upon his giving the bond prescribed by law, or, in case of his failure so to do, by a freeholder, to be appointed by the surrogate.   In either case a bond must be given as prescribed by section 2766 of the Code.   Decreed accordingly.